**Chun Qi CHEN, Petitioner,**

*v.*

**U.S. ATTORNEY GENERAL, Respondent.**

No. 03–4536–AG.

United States Court of Appeals, Second Circuit.

May 11, 2005.

Gang Zhou, New York, New York, for Petitioner.

Anne R. Schultz, Chief, Appellate Division (Marcos Daniel Jiménez, United States Attorney for the Southern District of Florida), Miami, Florida, for Respondent.

Present: SOTOMAYOR, B.D. PARKER, and WESLEY, Circuit Judges.

## SUMMARY ORDER

UPON DUE CONSIDERATION, it is hereby ORDERED, ADJUDGED AND DECREED that the petition for review of the order of the Board of Immigration Appeals ("BIA") is DENIED.

Petitioner Chun Qi Chen ("petitioner") petitions for review of a March 10, 2003 order of the BIA that affirmed a March 9, 2000 order of Immigration Judge ("IJ") Alan Vomacka, denying petitioner's application for, *inter alia*, asylum under 8 U.S.C. § 1158.[1] We assume the parties' familiarity with the facts and procedural history of the case.

Where, as here, the BIA issues a brief order affirming the IJ's decision while also providing additional reasoning, we review the decisions of both the BIA and the IJ. *See, e.g., Zhou Yun Zhang v. United States INS*, 386 F.3d 66, 73–75 (2d Cir. 2004). We uphold an IJ's factual findings when they are supported by "substantial evidence." *Id.* at 73. Factual findings pertaining to credibility are entitled to "particular deference," and our review of those findings is "exceedingly narrow." *Id.* at 73, 74 (citation and internal quotation marks omitted).

Petitioner challenges the IJ's adverse credibility finding on a number of grounds, arguing, *inter alia*, that (1) the IJ erred in finding that petitioner's demeanor and facial expression undermined his credibility; (2) the IJ improperly assumed that petitioner was financially motivated to lie; (3) the IJ improperly found that petitioner had become a member of an illegal smuggling organization; (4) the IJ found inconsistencies where none existed; and (5) the IJ ignored the record by finding that certain aspects of petitioner's claims were implausible. Though we do not adopt the IJ's reasoning in its entirety, we conclude

1. The IJ also denied petitioner's application for withholding of removal under 8 U.S.C. § 1231(b)(3)(A) and for relief under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment. Petitioner has pursued neither of those claims in his briefs before this Court, and we will not consider them. We also decline to consider petitioner's due process claim, which he mentions only briefly in his appellate brief. *See Norton v. Sam's Club*, 145 F.3d 114, 117–18 (2d Cir.1998) ("Issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal.").

that substantial evidence supports the adverse credibility finding.

With respect to the IJ's reliance on petitioner's demeanor, we note that one of the principal reasons for which we defer to immigration judges on credibility issues is that they are better positioned than this Court to assess a witness's demeanor and self-presentation. *See id.* at 73–74. On the other hand, we agree with petitioner that where cultural differences are at play, immigration judges must exercise caution before finding that a particular gesture, tone or facial expression undermines credibility. *Cf. Chouchkov v. INS,* 220 F.3d 1077, 1083 n. 15 (9th Cir.2000) ("[W]hat sounds peculiar in one country may be the norm in another."). Here, however, we are satisfied that the IJ exercised sufficient caution. The IJ did not jump to conclusions with respect to petitioner's demeanor or smile; rather, he expressed his concerns directly to petitioner during the hearing and provided him with an opportunity to explain. Petitioner indicated that he was nervous but then immediately changed his story and said he was not nervous. In the end, the IJ concluded that while "some people may smile or look lighthearted when they're in a somewhat nervous situation," petitioner's "puzzling" demeanor in the case at bar undermined his credibility "to a certain extent." Under the "'particular[ly] deferen[tial]'" standard of review that we apply to credibility determinations, *Zhou Yun Zhang,* 386 F.3d at 73 (citation omitted), we conclude that substantial evidence supports the IJ's conclusion.

Petitioner also criticizes the IJ's supposed "unspoken but clearly implied" finding that petitioner had a financial motive to lie about his asylum claim due to the debt he owed his family for paying smugglers for his illegal entry. This argument mischaracterizes the record. The IJ merely noted that he would "consider [petitioner's] credibility from scratch" and "not tak[e] it for granted that he's telling the truth," in part because petitioner is "financially motivated" to stay in the United States. Reading the IJ's decision as a whole, it is clear that this passing observation did not play a significant role in the credibility finding.

Petitioner also challenges the IJ's supposed finding that petitioner "had become an integral part" of a smuggling organization and "had hence lost his credibility for that reason alone." The record simply does not support petitioner's characterization of the IJ's ruling. Nothing in the IJ's decision indicates that the IJ found petitioner to be "an integral part" of a smuggling organization, or that the IJ discounted petitioner's credibility for that reason.

With regard to the discrepancies and omissions in petitioner's application, petitioner takes issue with the IJ's finding of an inconsistency between the written asylum application and petitioner's spoken testimony regarding the number of people arrested at the demonstration. Petitioner points out that the application claimed only that two *"union leaders"* were arrested, and that this claim is fully consistent with his later testimony that six *"members of the group"* were arrested. Thus, petitioner contends, the IJ erred in concluding that petitioner had described the event inconsistently. Even if petitioner is correct, however, that his two versions of the story are technically reconcilable, he has still failed to explain why he would omit such a fundamental fact from his initial application. Given that the alleged negative response of government officials to the demonstration was the *only* true instance of government mistreatment described in the asylum application, it is exceedingly difficult to understand why petitioner's application would mention only two of the six

arrests that allegedly took place. Because this omission went "to the heart" of petitioner's claim for asylum, *Secaida–Rosales v. INS*, 331 F.3d 297, 308–09 (2d Cir.2003), the IJ did not err in concluding that it undermined petitioner's credibility. *See Dong v. Ashcroft*, 406 F.3d 110, 111–12 (2d Cir.2005) (per curiam) (holding that IJ properly based adverse credibility finding on omission in asylum application where omitted fact went " 'to the heart of [the] asylum claim.' " (citation omitted)).

We similarly find no error in the IJ's reliance on discrepancies in petitioner's description of police tactics at the demonstration. In the written asylum application, petitioner claimed only that the police "chase[d] people away," while at the hearing, petitioner testified that demonstrators were beaten and that the police struck petitioner with a police stick, though petitioner was not seriously injured. The failure to mention the alleged use of force in the original application was a substantial, material omission going to the heart of petitioner's claim. The IJ thus did not err in finding that the subsequent embellishment undermined petitioner's credibility.

Other omissions and inconsistencies further bolster the IJ's adverse credibility finding. For example, petitioner claimed on the written application that he did not belong to any organizations or groups in China but later claimed to belong to the Communist Party Youth Organization. Petitioner also altered his description of events leading to the issuance of a certificate of employment from the lumber company for which he worked. The IJ noted at the hearing that the certificate was issued well after petitioner had left China and that it seemed strange that the company would assist petitioner, in light of the petitioner's public allegations of corruption of the company's leadership. Petitioner's initial response to the IJ was that because petitioner had "actually worked there," the company had "no choice" but to provide the certificate. He explained that his parents "went there to ask [the company] to issue it." When the IJ reminded petitioner that his father worked at the company, petitioner explained that the certificate was issued because his father requested it.

Petitioner's difficulties in describing his voyage to the United States also support the adverse credibility finding. Petitioner was unable to identify any of the several countries through which he traveled en route to the United States, with the exception of Mexico. He also claimed to have never looked inside the passport provided to him. Applying a deferential standard of review, we affirm the IJ's conclusion that this testimony was implausible.

We do not agree with the IJ's decision in every particular. We agree with petitioner, for example, that the IJ erroneously identified an inconsistency in petitioner's descriptions of the number of people detained at the demonstration. Contrary to what the IJ found, petitioner never claimed that all 60 people were *detained* for interrogation. We also find troublesome the IJ's speculation that petitioner did not seem to be the sort of person who would engage in a union protest. *See Secaida–Rosales*, 331 F.3d at 307 (noting that adverse credibility findings must not be based on "speculation or conjecture" (citation and internal quotation marks omitted)). Nevertheless, despite some scattered, relatively minor flaws in the IJ's reasoning, we are unable to conclude that the IJ's conclusion lacked a substantial evidentiary basis. *Zhou Yun Zhang*, 386 F.3d at 77 ("[I]t is not our task to see if [the] inconsistent statements can somehow be reconciled.... We consider only whether ... a reasonable adjudicator would be compelled to conclude, contrary to the IJ and BIA, that [petitioner] provided a credible account of persecution.").

Reading the record as whole, we hold that substantial evidence amply supports the IJ's adverse credibility finding, and we affirm the denial of relief on that basis. *See Wu Biao Chen v. INS*, 344 F.3d 272, 276 (2d Cir.2003) (per curiam) (affirming the denial of asylum and withholding of removal where petitioner had failed to overcome an adverse credibility finding); *see also Ramsameachire v. Ashcroft*, 357 F.3d 169, 185 (2d Cir.2004) (noting that an adverse credibility finding dooms an asylum claim). We do not reach the secondary issue of whether the events as alleged by petitioner rise to the level of persecution.

For the foregoing reasons, the petition for review is DENIED.